FILED

2007 Sep-18  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FRED MORRIS, for the Estate of
Clinton Arlo Morris, deceased,

     Plaintiff,

v.                              CASE NO.: CV-06-J-1583-S

CHRIS CURRY, SHERIFF, et al.,

     Defendants.

### MEMORANDUM OPINION

Pending before the court are defendant Naphcare, Inc.'s motion for summary judgment and evidence in support of said motion (doc. 37), and defendant Nina Ferguson's motion for summary judgment and evidence in support of said motion (doc. 36).[1]  The plaintiff filed a brief and evidence in opposition to defendant Nina Ferguson's  motion (doc. 38). Each defendant thereafter filed a reply (docs. 41 and 42).[2]  Having considered said motions, response and replies, the court finds as follows:

---

[1]All other named defendants were dismissed by previous orders of this court.  *See* Order of October 5, 2006 (doc. 18) and Order of November 7, 2006 (doc. 23).

[2]The plaintiff failed to file a response to defendant Naphcare's motion for summary judgment.  However, defendant Naphcare filed a "Reply to Plaintiff's Response to Naphcare's Motion for Summary Judgment" (doc. 41).

## FACTUAL BACKGROUND

The plaintiff filed suit under 42 U.S.C. §1983 asserting violations of the decedent's Fourteenth Amendment rights due to deliberate indifference to the decedent's medical needs. Count Two of plaintiff's Amended Complaint (doc. 11).[3] The plaintiff also alleges state law claims for negligence and negligent medical care against defendants Naphcare and Ferguson. Counts Three and Four of plaintiff's Amended Complaint (doc. 11). Each of these claims is based on the decedent's illness and subsequent death while a pretrial detainee at the Shelby County jail.

The decedent was arrested and placed in the Shelby County jail on July 17, 2004, for failure to appear in court and numerous driving infractions. Depo. of Mary Ann Blake, at 80. He was questioned at that time about his medical history. However, his medical chart is incomplete as it did not contain any record of his history or a physical. Ferguson depo. at 54-56, 68. The decedent informed defendants that he was a drug user but had no other known health problems. On July 18, 2004, decedent began a detoxification program which involved receiving several medications during the course of the day.[4] Ferguson depo. at 50-51, 68.

---

[3]The claims in Count One of the Amended Complaint were previously dismissed by the court. *See* Order of November 7, 2006 (doc. 23).

[4]The decedent's medical records reflect that sometime around the end of June 2004 the decedent was "in a wreck ... while on a motorcycle. He was Life-Flighted to UAB at that time and had a workup and was quickly discharged to jail." Plaintiff exhibit 8, at 5.

Also on July 18, 2004, decedent was in an altercation with another inmate. During the following week, the decedent developed pain and swelling in his neck and weakness of his limbs.  Decedent complained to jail personnel beginning July 21, 2004, and asked to see a nurse, but did not see a nurse until July 24, 2004.  Exhibit H to Ferguson motion (doc. 36); Blake depo. at 81-82.

During the relevant time period, defendant Nina  Ferguson was the director of Nursing at the Shelby County Jail.  Ferguson depo. at 35.  Two officers reported to defendant Ferguson, an employee of defendant Naphcare, that decedent had requested to see a nurse, but defendant Ferguson did not see the decedent.  Ferguson depo. at 67-68.  Defendant Ferguson asserts that because decedent was on lock down, the nursing staff did not see him personally to dispense the detoxification medications, but rather sent them via a corrections officer.  Ferguson depo. at 35, 68.  She was the nurse who dispensed the medication on the 19th, 20th, 21st and 22nd of July 2004. Ferguson depo. at 62, 87.

On July 21, 2004, the decedent reported to William Moore, a jail deputy, that his neck and shoulders were hurting.  Statement of William Moore (submitted as plaintiff's exhibit 4).  *See also* depo. of Blake at 81-82.  Moore noted that the decedent was walking very slowly and said he was hurting "real bad."  Statement of Moore.  Moore relayed this information to defendant Ferguson and told her that the

decedent wanted to see her.  *Id*.  Ferguson does not remember this.  Ferguson depo. at 71-72.

Decedent's complaints of his neck hurting were also relayed to Darnesha Wilson, an LPN.  Statement of Wilson, submitted as plaintiff exhibit 3.  Wilson in turn told defendant Ferguson, who replied that the decedent could not have any more medication.  *Id.*  Ferguson does not remember this conversation.  Ferguson depo. at 75-76.

Another corrections officer, Marvin Hayes, observed the decedent in his cell and relayed his observations to defendant Ferguson.  Statement of Hayes, submitted as plaintiff exhibit 5.  Ferguson informed Hayes that decedent was already on medication and she did not want to see him.  *Id*.  Hayes also told Nurse Wilson that decedent was acting "funny" and she relayed this information to defendant Ferguson, but Ferguson again stated she did not want to see the decedent.  *Id.*  Ferguson testified that she did not remember this conversation.  Ferguson depo. at 73-74.  In fact, Ferguson never saw decedent.  Statement of Ferguson, submitted as plaintiff exhibit 6.

Finally, on July 24, 2004, the decedent was seen by Nurse Melissa Barbee, another Naphcare employee.  Exhibit H to Ferguson motion; statement of Barbee, submitted as plaintiff exhibit 8.  She noted his complaints of his neck hurting and being swollen, noted that he could stand with assistance, and that he was able to

4

squeeze her hands.  *Id*.  However, she took no vital signs and did not complete a basic assessment.  Blake depo. at 101-102.

On July 25, 2004, two officers found decedent incapacitated.  Complaint, at 6. Defendant Deputy Steve Goble reported the decedent's condition to Nurse Barbee. Exhibit H to Ferguson motion.  She again examined the decedent and received authorization from a medical doctor she called, Dr. DeLong, that decedent be taken to Shelby Baptist Medical Center.  *Id*.  The decedent was transported to Shelby Baptist Medical Center by patrol car.  Plaintiff exhibit 8.  Shelby Baptist Medical Center diagnosed the decedent with a pharyngeal abscess and a cervical cord lesion. *Id*.  The decedent was thereafter transferred to UAB Medical Center.  Exhibit H to Ferguson motion.  The decedent was diagnosed at UAB as suffering from a cervical cord lesion and pharyngeal abscess.  Due to the advanced state of these conditions, treatment was not successful and decedent died on August 16, 2004.  An autopsy determined the cause of death to be multiorgan failure secondary to an overwhelming Staph aureus septicemia.  Plaintiff's exhibit 9, at 4.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."   *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence
> of an element essential to that party's case, and on which that party will
> bear the burden of proof at trial.   In such a situation, there can be no
> genuine issue as to any material fact, since a complete failure of proof
> concerning an essential element of the nonmoving party's case
> necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.   The party moving for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact.   *Id.* at 323.   The burden then shifts to

the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the

'depositions, answers to interrogatories, and admissions on file' designate 'specific

facts showing that there is a genuine issue for trial.'"   *Celotex*, 477 U.S. at 324,

Fed.R.Civ.Pro. 56(e).   In meeting this burden the non-moving party "must do more

than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   That

party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c);

*Matsushita*, 475 U.S. at 587.   *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986).   The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

### III. LEGAL ANALYSIS

*A.  Claims against defendant Ferguson*

 *1. Violation of the Fourteenth Amendment* (Count Two):

 42 U.S.C. § 1983 prohibits a person, acting under color of state law, from depriving another person of his or her rights secured by the United States Constitution. *See* 42 U.S.C. § 1983.  Section 1983 creates no substantive rights on its own, but merely provides a remedy for deprivation of federal constitutional rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996).  To prevail on a suit under § 1983, the plaintiff must show both a deprivation of federal rights and that said deprivation was by a person acting under color of state law.  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992).

 Because the decedent was a pretrial detainee, any rights he had arose pursuant to the Fourteenth Amendment, although the same standards are applied as to claims under the Eighth Amendment.   *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).  "The standard for providing basic human needs to those incarcerated or in detention is the same under both the

Eighth and Fourteenth Amendments." *Purcell v. Toombs County,* 400 F.3d 1313, 1318 n. 13 (11th Cir.2005)(quoting *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1024 n. 5 (11th Cir.2001).  *See also McDowell v. Brown,* 392 F.3d 1283, 1290 n. 8 (11th Cir.2004); *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994); *Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th  Cir.1985) (holding that "in regard to providing pretrial detainees with such basic necessities as ... medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").

A jail official violates the Fourteenth Amendment when he or she acts with deliberate indifference to the serious medical needs of a prisoner. *See Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment prohibition on cruel and unusual punishment violated when prison official acts with deliberate indifference to a prisoner's serious medical need); *see also Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 n. 6 (11th Cir.1997) (applying deliberate indifference standard to claim by pretrial detainee). Deliberate indifference includes both an objective and a subjective component. *Farrow v. West,* 320  F.3d 1235, 1243 (11th  Cir.2003). The objective component is judged by contemporary standards of decency, while the subjective component requires proof of actual knowledge of the need for medical treatment and intentional refusal to provide it. *Hill v. Dekalb County,* 40 F.3d 1176, 1186 (11th Cir.1994) *(rev'd on other grounds by Hope v.*

8

*Peltzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666, (2002).  When an official "knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate[,]" his or her actions amount to deliberate indifference.  *Id*., at 1186.  Thus, the plaintiff must establish both that an objectively serious medical need existed and that the defendant's response to that need amounted to deliberate indifference.  *Farrow,* 320 F.3d at 1243.  *See also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986)  (deliberate indifference is medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"); *Ancata v. Prison Health Services, Inc*., 769 F.2d 700, 704 (11th Cir.1985) (stating the standard as requiring knowledge of the need for medical care and an intentional refusal to provide that care).

If there is no deliberate indifference, there can be no violation of a constitutional right and hence no § 1983 liability.  Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment.  *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995) citing *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.

The plaintiff asserts that defendant Ferguson was deliberately indifferent to the serious medical needs of the decedent.  Plaintiff's brief (doc. 38) at 2.  The defendant responds that the plaintiff "failed to prove on (sic) occasion where Nurse Ferguson failed to provide, refused to provide, and/or delay (sic) medical treatment to Morris."

9

Defendant Ferguson's brief, at 9.  In response, the plaintiff offered evidence, albeit inadmissable hearsay, of multiple individuals who each claim he or she notified defendant Ferguson that the decedent needed medical care.  The court refrains from deciding whether to believe Ferguson or the unsworn statements of three other individuals, as a judge may not make credibility determinations. That task falls to a jury. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-151, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105, 122 (2000), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986).

To establish deliberate indifference, the plaintiff must show that the defendant had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999).  See also *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (stating that defendant must have subjective awareness of an "objectively serious need" and that her response must constitute "an objectively insufficient response to that need").

The court does not conclude that defendant Ferguson's failure to ever examine the plaintiff automatically protects her from a finding of deliberate indifference.  To do so would set a dangerous precedent, as failing to examine a detainee could always provide a similarly situated defendant with a claimed lack of subjective knowledge

of a risk of serious harm and thus encourage a complete lack of care by medical providers in jails and prisons.  Rather, the court is of the opinion that in the light most favorable to the plaintiff, defendant Ferguson's refusal to see or assess decedent could theoretically amount to a deliberate indifference to the plaintiff's serious medical needs.  However, the court's analysis does not end here for a plaintiff must also show that the constitutional violation caused his injuries.  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir.2001).

There is no evidence before the court that had defendant Ferguson examined the decedent, she would have found he was suffering from sepsis.  According to the plaintiff's nursing expert, Mary Ann Blake, when an LPN reports to a nurse that a patient has a problem, "it is kind of a natural thing for the nurse to go and check on the patient."  Blake depo. at 85.  However, there is no evidence that Ferguson's lack of action caused the decedent's death.  The plaintiff has offered no evidence that had Ferguson examined the decedent prior to July 24, 2004, she would have found any symptoms which would have prompted her to provide any medical care.  In fact, the plaintiff's expert, Nurse Blake, testified that she could not state with any reasonable degree of medical certainty that defendant Ferguson's alleged deliberate indifference brought about the decedent's death.  Blake depo. at 112.

11

On July 24, 2004,  Nurse Barbee did examine the decedent.  She recorded he could move, had bilateral strength and his pupils were equally reactive, indicative of no neurological deficits.  Blake depo. at 63, 103.  She noted the decedent's neck was swollen, but also that he could move his neck and talk.  Blake depo. at 102.  Nurse Blake testified that from the records she reviewed, she could not draw any conclusion as to how long the decedent had exhibited symptoms related to the medical condition from which he died.  Blake depo. at 98-99.  Nurse Blake also testified that the description of decedent on the morning on July 25, 2004, reflected a complete change in the appearance of the symptoms exhibited by the decedent.  Blake depo. at 103-104.

The medical records establish that the plaintiff was suffering from a cervical cord lesion when he was seen in the Shelby Baptist Medical Center emergency room on July 25, 2004.  Plaintiff exhibit 8, at 5.  Those records reflect that the lesion developed over the past 48 hours.  *Id.*  A large red area was noted on the side of his neck.  Plaintiff exhibit 8, at 11.

According to William Lapidus, M.D., the onset of staph aureus is usually abrupt, it comes on acutely and with rapid deterioration.  Lapidus depo. at 10.  Dr. Lapidus further testified that neck pain would be common to the type of altercation the plaintiff was in prior to the onset of sepsis, and would not have caused him to

consider the possibility of an infection.  Lapidus depo. at 13.  He further stated that a complaint of neck pain following a known injury would not necessarily require vital signs be done.  Lapidus depo. at 15, 17.  Dr. Lapidus testified further that from his consideration of the medical records, nothing could have been done to prevent the death of decedent and that when Nurse Barbee examined the plaintiff on July 24, 2004, nothing was present to indicate that she should have done anything differently or additionally.  Lapidus depo. at 17-19.

Having considered the foregoing, the court is of the opinion that defendant Ferguson's motion for summary judgment on the plaintiff's claims pursuant to 42 U.S.C. § 1983 is due to be granted, as no genuine issue of material fact exists.

2.  *State Law Negligence Claims (Counts 3 and 4):*

While this court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(3).  Because resolution of the remaining counts of the plaintiff's complaint depend on determinations of state law, that claim is best resolved by the Alabama courts.  *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1352-1353 (11th Cir.1997).  The court notes that the plaintiff's state law claims will not be barred by the statutes of limitations in light of the tolling provisions of 28 U.S.C. § 1367(d).

The court shall therefore Order that the plaintiff's remaining claims are to be dismissed without prejudice to plaintiff's right to refile said claims in the appropriate state court forum.

*B.  Claims against Naphcare*

The plaintiff has failed to offer any evidence in opposition to defendant Naphcare's motion for summary judgment.  As such, the court finds the plaintiff has abandoned its claims against Naphcare.[5]  *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th  Cir.2003); *see also Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

Having considered the foregoing, and finding that defendant Naphcare's motion for  summary judgment is due to be granted on all counts of the amended complaint, the court shall so rule by separate order.

**DONE** this the 18th day of September, 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[5]The court does not consider whether defendant Naphcare could have liability under the theory of *respondeat superior* for the actions of defendant Ferguson which form the basis for plaintiff's state law claims, as the court has not undertaken any consideration of those claims.

14